Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/08/2016 09:06 AM CDT

Christy J. Hargesheimer and Richard S.
Hargesheimer, appellants, v. John Gale,
Secretary of State of the State of
Nebraska, et al., appellees.
___ N.W.2d ___

Filed July 8, 2016.    No. S-16-107.

1. **Motions to Dismiss: Pleadings: Appeal and Error.** An appellate court reviews a district court's order granting a motion to dismiss de novo, accepting all allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party.

2. **Motions to Dismiss: Appeal and Error.** When reviewing a dismissal order, the appellate court accepts as true all the facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the pleader's conclusions.

3. **Motions to Dismiss: Pleadings.** To prevail against a motion to dismiss for failure to state a claim, a plaintiff must allege sufficient facts to state a claim to relief that is plausible on its face.

4. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.

5. **Initiative and Referendum: Statutes: Words and Phrases.** "Sponsoring the petition" in the context of Neb. Rev. Stat. § 32-1405(1) (Reissue 2008) means assuming responsibility for the initiative or referendum petition process.

6. **Constitutional Law: Initiative and Referendum.** The rights of initiative and referendum constitutionally provided should not be circumscribed by restrictive legislation or narrow and strict interpretation of the statutes pertaining to their exercise.

7. **Appeal and Error.** An appellate court will not consider an issue on appeal that was not presented to or passed upon by the trial court.

Appeal from the District Court for Lancaster County: LORI A. MARET, Judge. Affirmed.

Alan E. Peterson, Christopher Eickholt, Jerry Soucie, and Amy Miller for appellants.

Douglas J. Peterson, Attorney General, Ryan S. Post, L. Jay Bartel, and David A. Lopez for appellee John Gale.

L. Steven Grasz and Mark D. Hill, of Husch Blackwell, L.L.P., and J.L. Spray, Stephen D. Mossman, and Ryan K. McIntosh, of Mattson Ricketts Law Firm, for appellees Nebraskans For the Death Penalty, Inc., et al.

HEAVICAN, C.J., WRIGHT, MILLER-LERMAN, CASSEL, and KELCH, JJ., and MCCORMACK, Retired Justice, and INBODY, Judge.

MILLER-LERMAN, J.
## NATURE OF CASE
Christy J. Hargesheimer and Richard S. Hargesheimer appeal the order of the district court for Lancaster County dismissing a complaint in which they challenged a referendum petition. The purpose of the referendum was to overturn the Nebraska Legislature's 2015 repeal of Nebraska's death penalty. The Hargesheimers alleged that the referendum petition filed with the Nebraska Secretary of State was not legally sufficient, because a list of sponsors filed with the petition did not include the name of Nebraska Governor Pete Ricketts, who, the Hargesheimers alleged, engaged in various activities that established that he was a sponsor of the referendum. This case presents the limited question of statutory construction: Who is a "sponsor" under Neb. Rev. Stat. § 32-1405(1) (Reissue 2008)? Because Ricketts' alleged financial and other support of the referendum did not make him a "sponsor" under the relevant statute, the Hargesheimers' complaint failed to state a claim upon which relief could be granted. We affirm the district court's dismissal of the Hargesheimers' complaint.

## STATEMENT OF FACTS

The Nebraska Legislature passed 2015 Neb. Laws, L.B. 268, which had the purpose of repealing Nebraska's death penalty. As Nebraska's Governor, Ricketts vetoed L.B. 268, but the Legislature overrode his veto on May 27, 2015.

On June 1, 2015, a referendum petition regarding L.B. 268 was filed with Nebraska Secretary of State John Gale. The purpose of the petition was to refer to the voters in the November 8, 2016, general election the question of whether the death penalty should be reinstated by repealing L.B. 268. A document titled "Sworn List of Sponsors" containing four names was filed with the referendum petition. The document listed as sponsors of the referendum petition the name "Nebraskans For the Death Penalty, Inc.," described as "a Nebraska non-profit public benefit corporation and a ballot committee," and three individuals—Judy Glasburner, Aimee Melton, and Bob Evnen—each of whom was described as a "Board member." Nebraskans For the Death Penalty and the three individuals are hereinafter referred to collectively as the "Named Sponsors." No other names were included in the list of sponsors.

On September 17, 2015, the Hargesheimers filed a complaint against the Secretary of State and the Named Sponsors. The Hargesheimers sought, inter alia, to enjoin the Secretary of State from placing the referendum regarding L.B. 268 on the ballot. Under Neb. Rev. Stat. § 32-1412(2) (Reissue 2008), "the court, on the application of any resident, may enjoin the Secretary of State and all other officers from certifying or printing on the official ballot for the next general election the ballot title and number of such measure." The Hargesheimers alleged that the referendum petition was not legally sufficient, because it failed to comply with § 32-1405(1), which provides as follows:

> Prior to obtaining any signatures on an initiative or referendum petition, a statement of the object of the petition and the text of the measure shall be filed with the

Secretary of State together with a sworn statement containing the names and street addresses of every person, corporation, or association sponsoring the petition.

In particular, the Hargesheimers alleged that Ricketts was a sponsor and that the list of sponsors filed with the Secretary of State was incomplete because it failed to contain the name and address of Ricketts. They alleged that Ricketts was "in actuality the primary initiating force behind and one of the sponsors" of the referendum petition and that the omission of his name was critical and fatal to the referendum petition because § 32-1405(1) required that the "'sworn statement [contain] the names and street addresses of <u>every</u> person . . . sponsoring the petition.'" (Emphasis in original).

The Hargesheimers alleged that Ricketts had engaged in various specific activities and that such activities established that Ricketts was an undisclosed sponsor of the referendum petition. The alleged activities included the following: (1) Prior to the override of his veto, Ricketts had warned persons involved with L.B. 268 that a referendum would ensue if his veto was overridden; (2) various "close allies" of Ricketts had, "on his request, order or encouragement [taken] on various campaign management, public relations, organizing and publicity roles" on or before the date the referendum petition was filed with the Secretary of State; (3) Ricketts campaigned to raise money for the referendum by sending letters to Nebraskans; (4) Ricketts and his father "became by far the largest financiers and donors" to the referendum after it was filed and even earlier had "almost certainly promised" to provide such financial support; (5) Ricketts, along with his "representatives and agents," "solicited other political, social or business allies" to make financial contributions to the referendum; and (6) Ricketts personally and through advisors and agents "managed, organized and controlled the referendum campaign." They also alleged that one of the Named Sponsors, Melton, had "indicated publicly that she was recruited by someone 'close to the Governor' to put her name in as a leader or sponsor" of the referendum.

The Hargesheimers requested as relief (1) a permanent injunction enjoining the Secretary of State from placing the referendum on the ballot and (2) a declaratory judgment finding that (a) prior to collecting signatures, the leaders and sponsors of the referendum petition failed to file a sworn statement listing every sponsor as required by § 32-1405(1), and (b) the omission of the names and addresses of one or more principal sponsors, specifically Ricketts, was a material and fatal omission and made the referendum petition insufficient and invalid as a matter of law. They also sought costs and other relief the court deemed just.

The Named Sponsors responded by filing a motion to dismiss the complaint pursuant to Neb. Ct. R. Pldg. § 6-1112(b)(6) for failure to state a claim upon which relief may be granted. They asserted that the sole issue in the complaint was whether Ricketts should have been named as a sponsor in the list filed with the Secretary of State. The Secretary of State filed a separate motion to dismiss pursuant to § 6-1112(b)(6).

The Named Sponsors attached to their motion to dismiss a copy of a document titled "Sworn List of Sponsors" with a certification by the Secretary of State that the document was "a Sworn List of the Sponsors for the Referendum Petition Regarding LB 268 (2015)." The Named Sponsors asserted that the district court could take judicial notice of the document without converting the motion to dismiss into a motion for summary judgment because the document was a matter of public record.

After a hearing, the district court entered an order sustaining the motions to dismiss. The court stated that the sole issue was whether the Hargesheimers had "alleged sufficient facts, accepted as true, to state a plausible claim that the failure to include Governor Ricketts as a listed 'sponsor' on the sworn statement filed with the Nebraska Secretary of State renders the referendum petition on LB 268 legally insufficient." The court determined that a sponsor under § 32-1405(1) is "'one who identifies himself or herself as willing to assume statutory

responsibilities once the initiative process has commenced'" and that the definition of persons "'sponsoring the petition'" does not include every person who strongly advocates for, supports, or financially contributes to a referendum effort. The court determined that by listing their names on the document filed with the Secretary of State, the Named Sponsors had taken responsibility for the referendum petition and were therefore the sponsors under § 32-1405(1). The court concluded that the allegations in the complaint did not show that Ricketts was a person "'sponsoring the petition,'" as that phrase is used in § 32-1405(1), and that the failure to include Ricketts in the list of sponsors did not render the petition legally insufficient. The court determined that the legal basis of the Hargesheimers' complaint was legally defective. The court concluded that "[t]his fatal defect is evident on the face of the Complaint as it is the basis for the only claim asserted therein." The court dismissed the complaint with prejudice.

Although it had concluded that it was clear from the face of the complaint that the Hargesheimers did not state a claim upon which relief could be granted, the court nevertheless continued its analysis by stating that it could take judicial notice of the document that the Named Sponsors had attached to their motion to dismiss. Referring to the document, the court stated that "[b]ecause a sworn statement containing the statutorily required information was filed in this case, the Secretary of State was obligated to proceed with performing his statutory duties" and added that "all the requirements of § 32-1405(1) [had] been met."

The Hargesheimers appeal.

ASSIGNMENTS OF ERROR

The Hargesheimers claim that the district court erred when it sustained the motions to dismiss for failure to state a claim and when it dismissed the complaint with prejudice and without allowing them an opportunity to amend the complaint. The Hargesheimers also claim that the court erred when it

took judicial notice of the document attached to the Named Sponsors' motion to dismiss and relied on the document to determine as a matter of law that the document satisfied the requirements of § 32-1405(1).

## STANDARDS OF REVIEW

[1-3] An appellate court reviews a district court's order granting a motion to dismiss de novo, accepting all allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party. *Rafert v. Meyer*, 290 Neb. 219, 859 N.W.2d 332 (2015). When reviewing a dismissal order, the appellate court accepts as true all the facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the pleader's conclusions. *White v. Kohout*, 286 Neb. 700, 839 N.W.2d 252 (2013). To prevail against a motion to dismiss for failure to state a claim, a plaintiff must allege sufficient facts to state a claim to relief that is plausible on its face. *Rafert, supra*.

[4] Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *Shurigar v. Nebraska State Patrol*, 293 Neb. 606, 879 N.W.2d 25 (2016).

## ANALYSIS

*The Hargesheimers' Complaint Did Not State a*
*Claim Upon Which Relief Could Be Granted,*
*and the District Court Did Not Err When*
*It Sustained the Motions to Dismiss.*

The Hargesheimers claim that the district court erred in two respects when it sustained the motions to dismiss for failure to state a claim. First, they claim that the court erred by adopting an incorrect definition of "'sponsor'" under § 32-1405(1). Second, they allege the court indicated that "'substantial compliance'" with the requirement to list every sponsor was sufficient. We reject the latter assignment of error, because

the court did not determine that "substantial compliance" was adequate.

To prevail against a motion to dismiss for failure to state a claim, a plaintiff must allege sufficient facts to state a claim for relief that is plausible on its face. *Rafert, supra*. The Hargesheimers alleged that Ricketts was involved in various respects with initiating and promoting the referendum petition process and that such involvement established that he was a sponsor of the referendum petition. They claim that the petition was legally insufficient because Ricketts was not listed as a sponsor. Therefore, whether the Hargesheimers stated a claim under § 32-1412(2) upon which relief could be granted depends on whether, assuming the truth of Ricketts' alleged activities, Ricketts should have been listed as a "person . . . sponsoring the petition" under § 32-1405(1). The answer to this question depends on the meaning of "sponsoring the petition" as the phrase is used in § 32-1405(1).

We note that § 32-1405(1) and related statutes regarding initiative and referendum petitions do not provide a definition for the word "sponsor" or for the phrase "sponsoring the petition" as used in § 32-1405(1). Thus, interpreting the meanings of "sponsor" and "sponsoring the petition" under § 32-1405(1) is a question of law initially for the district court and ultimately for this court to decide.

The district court found Chief Justice Hendry's concurrence in *Loontjer v. Robinson*, 266 Neb. 902, 670 N.W.2d 301 (2003) (Hendry, C.J., concurring in result), "highly persuasive" and adopted that definition. In his concurrence, Chief Justice Hendry addressed the meaning of "sponsor" under § 32-1405(1). Because the term "sponsor" was not defined in § 32-1405(1) or related statutes, he looked to a dictionary definition of "sponsor" as "'one who assumes responsibility for some other person or thing.'" *Loontjer*, 266 Neb. at 916, 670 N.W.2d at 311. Considering this dictionary definition in the context of the initiative statutes, and acknowledging that the exercise of the right of initiative should not be restricted

by strict interpretation of the statutes pertaining to the exercise of such right, the Chief Justice stated that it "seems reasonable to define sponsor as simply one who identifies himself or herself as willing to assume statutory responsibilities once the initiative process has commenced." *Id*. at 916, 670 N.W.2d at 311-12. He then cited various provisions of the initiative and referendum statutes that assigned certain responsibilities to sponsors. For example, § 32-1405(2) requires the Secretary of State to provide the sponsor with changes to the text of the measure proposed by the Revisor of Statutes and states that the sponsor may accept or reject such changes. Also, Neb. Rev. Stat. § 32-1409(3) (Reissue 2008) requires the Secretary of State to notify "the person filing the initiative or referendum petition" of the Secretary of State's determination as to whether sufficient valid signatures have been collected. And § 32-1412(2) requires that the sponsor of record is a "necessary party defendant" in an action commenced to enjoin the Secretary of State from placing a measure on the ballot. The Chief Justice finally stated in his concurrence in *Loontjer* that a person's support of an initiative, financial or otherwise, did not equate to sponsorship, and noted that the statutes recognized a "distinction between one who sponsors a petition initiative and one who financially contributes to that effort." *Loontjer*, 266 Neb. at 917, 670 N.W.2d at 312.

[5] We agree with the definition of the district court in this case and that of Chief Justice Hendry in his concurrence in *Loontjer*, and we interpret "sponsoring the petition" in the context of § 32-1405(1) as meaning "assuming responsibility for the initiative or referendum petition process." In *Loontjer*, the majority of this court stated that the requirement of a sworn list of sponsors under § 32-1405(1) "serves several important purposes," which include the following: (1) to prevent fraud in the petition process, because "sponsors take responsibility for the petition and expose themselves to potential criminal charges [under Neb. Rev. Stat. § 32-1502 (Reissue 2008)]

if information is falsified"; (2) to allow "the public and the media to scrutinize the validity and the completeness of any list of sponsors," because "[k]nowing the petition's sponsor could affect the public's view about an initiative petition"; and (3) to facilitate an action "seeking to enjoin the placement of an initiative on the ballot" by providing a list of the names and addresses of the sponsors who are necessary parties to such an action under § 32-1412(2). *Loontjer v. Robinson*, 266 Neb. 902, 911, 670 N.W.2d 301, 308 (2003). The definition of "sponsoring the petition," which we set forth above, is consistent with these purposes in the referendum process. A list of sponsors, or those who assume responsibility for the initiative or referendum petition process, informs the Secretary of State and the public of who may be held responsible for the petition. As issues arise throughout the referendum process, the sponsors must stand ready to accept responsibility to facilitate the referendum's inclusion on the ballot and stand ready to defend the referendum process if challenged.

In the Hargesheimers' complaint, they allege various types of involvement by Ricketts, including that Ricketts contributed considerable money to the referendum undertaking. They contend that it is important for the public to know of these contributions and that notice to the public can be achieved by listing Ricketts as a sponsor. With respect to financial contributions in particular, we think the disclosure of financial backing is met by other statutes regarding identification of financial contributors to the process. As Chief Justice Hendry noted in his concurrence in *Loontjer*, the predecessor statute to the current § 32-1405(1) required filing a statement with the Secretary of State, containing a list of individuals or entities "'sponsoring said petition *or contributing or pledging contribution of money or other things of value*.'" 266 Neb. at 917, 670 N.W.2d at 312 (Hendry, C.J., concurring in result). The statute therefore made a distinction between those "sponsoring" a petition and those supporting it financially and otherwise making valuable contributions.

The present form of § 32-1405(1) does not require contributors to be included in the filing with the Secretary of State under § 32-1405(1), and, as Chief Justice Hendry noted in *Loontjer*, information regarding persons contributing financially to a petition effort is now disclosed by filing reports with the Nebraska Accountability and Disclosure Commission. See, generally, Neb. Rev. Stat. §§ 49-1401 through 49-14,141 (Reissue 2010 & Cum. Supp. 2014). See, also, § 49-1405 (defining "Ballot question" and related provisions) and §§ 49-1445 through 49-1479.02 (reporting requirements, including § 49-1461 regarding specific filing requirements for ballot question).

As the statutes now exist, we understand that the statutory scheme requires that filings with the Secretary of State focus on identifying persons assuming responsibility for the initiative or referendum petition process, whereas filings with the Accountability and Disclosure Commission focus on identifying those persons who are financially supporting the effort. Together, these separate reporting requirements to the Secretary of State and to the Accountability and Disclosure Commission would facilitate the purpose of allowing the media and the public to know who is behind the effort—whether that person's backing of the petition takes the form of financial contributions or the form of taking legal responsibility for the petition process.

We further note that the definition we adopt is consistent with standards of statutory construction specifically related to laws implementing the rights of initiative and referendum. Although much of our case law considers the initiative process, and we recognize the origin of the rights of initiative and referendum are different, we find the salutory objectives described in the initiative cases persuasive, and we logically apply many of those principles to the referendum process. See *City of North Platte v. Tilgner*, 282 Neb. 328, 803 N.W.2d 469 (2011) (applying initiative principles to initiative and referendum process in municipality).

[6] We have stated that the power of initiative must be liberally construed to promote the democratic process, that the right of initiative is precious to the people and is one which the courts are zealous to preserve to the fullest tenable measure of spirit as well as letter, and that the provisions authorizing the initiative should be construed in such a manner that the legislative power reserved in the people is effectual. *Stewart v. Advanced Gaming Tech.*, 272 Neb. 471, 723 N.W.2d 65 (2006). See, also, *State ex rel. Lemon v. Gale*, 272 Neb. 295, 721 N.W.2d 347 (2006), and *Loontjer v. Robinson*, 266 Neb. 902, 670 N.W.2d 301 (2003). We also stated that the right of initiative constitutionally provided should not be circumscribed by restrictive legislation or narrow and strict interpretation of the statutes pertaining to its exercise. See *State ex rel. Morris v. Marsh*, 183 Neb. 521, 162 N.W.2d 262 (1968). These standards apply to the power of referendum as well as to the power of initiative. See *City of North Platte, supra* (courts liberally construe grants of municipal initiative and referendum powers to permit, rather than restrict, power and to attain, rather than prevent, its object).

With these standards in mind, we believe that the interpretation of § 32-1405(1) urged by the Hargesheimers would tend to restrict the powers of initiative and referendum by making compliance with the statute more precarious. If "sponsoring the petition" were construed to include persons who could be said to have heavily participated in the initiation or supported the petition process, such construction would inject ambiguity and make adherence difficult. Identifying the level of support needed to be such a sponsor would not be clear and would expose the petition process to procedural challenges and the risk of defects unrelated to the substance of the petition. The definition urged by the Hargesheimers does not facilitate the exercise or preservation of the initiative and referendum process. By contrast, the definition of "sponsoring the petition" that we adopt herein facilitates the initiative and referendum process by limiting the category of sponsors to those persons

or entities who have specifically agreed to be responsible for the petition process and serve in the capacities the statutes require of sponsors.

Applying our definition of "sponsoring the petition," to wit, "assuming responsibility for the initiative or referendum petition process," we determine that the district court did not err when it concluded that the Hargesheimers' complaint did not state a claim upon which relief could be granted under § 32-1412(2). Accepting the Hargesheimers' allegations regarding activities that Ricketts had undertaken in support of the referendum petition as true, we determine that such activities would not have established that Ricketts was "sponsoring the petition" as that phrase is used in § 32-1405(1) and that therefore, the referendum petition was not insufficient on this basis. Although Ricketts' alleged activities would indicate that he supported the process in a significant way and that he may have played a part in initiating the process, such activities do not form a basis to conclude that he was "sponsoring the petition" in the sense of assuming responsibility for the referendum petition process. Instead, it was the Named Sponsors who assumed such responsibility. Thus, the absence of Ricketts' name and address in the list of sponsors would not invalidate the petition and such alleged failure would not support the relief requested by the Hargesheimers.

Finally, the Hargesheimers contend that the district court should not have dismissed the complaint with prejudice and instead should have allowed them an opportunity to amend the complaint, complete discovery, or have an evidentiary hearing. However, they did not make a request to amend the complaint and they have not shown how an amendment could have cured the only claim made in the complaint—that given Ricketts' activities, the failure to include Ricketts' name in the list of sponsors made the petition legally insufficient. Because the complaint did not state a claim that is plausible on its face, neither discovery nor a hearing would yield a different

outcome on this issue. We find no error in the district court's dismissal of the complaint with prejudice.

*Consideration of Document Attached to Motion*
*to Dismiss Was Not Necessary to Disposition*
*of Motions, and We Need Not Consider*
*Whether It Was Error to Take Judicial*
*Notice of Such Document.*

The Hargesheimers claim that the district court erred when it took judicial notice of the document attached to the Named Sponsors' motion to dismiss and relied on such document when it stated that the document met "all the requirements" of § 32-1405(1). We refer to our foregoing analysis. Disposition of this case is based solely on the definition of sponsor under § 32-1405(1), and the complaint's allegations relative thereto. As a result, the court's consideration of the document was unnecessary to the district court's disposition of the motion to dismiss and therefore, we need not consider whether it was error for the court to take judicial notice of the document. The court's comment regarding the validity of the entirety of the document was mere dictum.

[7] For completeness, we note that in the Hargesheimers' reply brief, they raised for the first time an issue regarding whether the list of sponsors filed with the referendum petition was a properly "sworn statement" under § 32-1405(1). However, this issue was not presented to or ruled on by the district court and we will not consider the issue in this appeal. An appellate court will not consider an issue on appeal that was not presented to or passed upon by the trial court. *Purdie v. Nebraska Dept. of Corr. Servs.*, 292 Neb. 524, 872 N.W.2d 895 (2016).

## CONCLUSION

This case presents the limited question of statutory construction: Who is a "sponsor" under § 32-1405(1), which requires that the names and addresses of those individuals and

entities "sponsoring the petition" be filed with the Secretary of State prior to obtaining signatures on an initiative or referendum petition? Given our conclusion explained above that sponsors under § 32-1405(1) are individuals or entities assuming responsibility for the initiative or referendum process, we determine that even if the allegations in the Hargesheimers' complaint regarding Ricketts' involvement with the referendum petition were taken as true, Ricketts would not be required to be listed as a "person . . . sponsoring the petition" under § 32-1405(1) and that the alleged failure to include his name in the list of sponsors did not make the referendum petition legally insufficient; thus, the Hargesheimers failed to state a claim upon which relief could be granted. Because this was the only challenge to the referendum petition raised in the Hargesheimers' complaint, the district court did not err when it sustained the motions and dismissed the complaint with prejudice. We further conclude that consideration of the document attached to the Named Sponsors' motion to dismiss was not necessary to the disposition of the motion, and we therefore need not determine whether it was error to take judicial notice of the document. We do not consider whether the list of sponsors filed with the referendum petition was a properly "sworn statement," because the issue was not presented to or ruled on by the district court.

AFFIRMED.

CONNOLLY and STACY, JJ., not participating.